## GULF, C. & S. F. RY. CO. v. WILLIAMS et al. (No. 2712.)

(Court of Civil Appeals of Texas. Texarkana. March 20, 1923. Rehearing Denied May 3, 1923.)

**1. Carriers ⬅️321(5)—Instruction permitting recovery for failure to heat depot, though railroad not negligent, held not erroneous.**

In an action against a railroad to recover damages for failure to keep its waiting room warm, where plaintiff was shown to have occupied the waiting room for several hours between trains, an instruction permitting recovery, if the jury believed defendant did not keep the depot properly heated during such time, *held* not erroneous, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 6591, and article 4553a, rule 52, requiring a railroad, while its depot is "in use for the accommodation of the public," to have same "properly ventilated and, if necessary, heated," though no finding of defendant's negligence or failure to use care was required.

**2. Carriers ⬅️347(3)—Testimony of plaintiff, suing a railroad for failure to heat depot, held not to raise question of contributory negligence for jury.**

In an action against a railroad to recover damages for failure of defendant to properly heat a depot waiting room, testimony by plaintiff that she "was passing through the change of life and was unwell at the time she took the trip" *held* not to present question for jury of plaintiff's contributory negligence.

**3. Trial ⬅️260(1)—Denial of instructions substantially embraced in the court's main charge is not error.**

Denial of instructions substantially embraced in the court's main charge is not error.

Hodges and Levy, JJ., dissenting in part.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Action by Dora B. Williams and husband against the Gulf, Colorado & Santa Fé Railroad Company and another. Judgment for plaintiff, and defendant named appeals. Affirmed.

This was a suit by appellee Mrs. Dora B. Williams, joined by her husband, the other appellee, against appellant and the receiver of the Missouri, Kansas & Texas Railway Company of Texas, to recover damages for personal injuries she claimed she suffered because of the failure (she alleged) of appellant and said receiver to keep the waiting room in the depot at Celeste, jointly used by them, warm during time she was waiting therein for one of appellant's trains. It appeared from the testimony that appellees, who resided at Pecan Gap, had visited their daughter at Leonard, and at about 4 o'clock of the afternoon of Sunday, November 21, 1920, left Leonard for their home, traveling on a Missouri, Kansas & Texas Railway Company train to Celeste, where they were to take one of appellant's trains for Pecan Gap. They reached Celeste about dark, and waited in the depot there for appellant's train, which was due to arrive at 9:20 p. m. They claimed that the weather was cold and chilly during the time they waited in the depot, and that appellant and the receiver failed to discharge duty they owed them to keep the waiting room warm, and that a consequence of such failure was that Mrs. Williams was made sick by exposure she underwent to cold while waiting for the train. It appeared without dispute in the testimony that a fire was not started in the depot until a few minutes before the train appellees were waiting for arrived at Celeste, but the testimony was conflicting as to the state of the weather during the time they were in the depot waiting for the train. That on the part of appellees was that it was raining and very cold and disagreeable, while that on the part of appellant and the receiver was that it was dry and comfortably warm. At the conclusion of the testimony Mrs. Williams dismissed her suit, so far as it was against the receiver of the Missouri, Kansas & Texas Railway Company. The verdict of the jury was in her favor for $700 against appellant, and judgment was rendered accordingly.

Terry, Cavin & Mills and O. B. Wigley, all of Galveston, and McMahon & Dohoney, of Greenville, for appellant.

Evans & McCoy, of Greenville, for appellees.

WILLSON, C. J. (after stating the facts as above). After telling the jury that railway companies in this state "are required by law to keep their passenger waiting rooms warm for a period of one hour before and after the departure of their passenger trains," and to keep their depots, "while open and in use for the accommodation of the public, sufficiently heated when necessary to be reasonably comfortable to people in ordinary condition and state of health," the court below instructed the jury to find for Mrs. Williams, other conditions concurring, if they believed—

"that after the expiration of one hour from the time of the arrival of the trains from Leonard upon which the plaintiff had come to Celeste the Gulf, Colorado & Santa Fé Railway Company kept said depot open for the accommodation of the public until its train arrived at or about 9.30 p. m., and that the plain-

tiff upon her arrival at Celeste went into and during said time remained in said depot, and further believe that it was cold and chilly in said depot, and further believe from the evidence that the agent of the Gulf, Colorado & Santa Fé Railway Company in charge of said depot during said time failed to keep the passenger waiting room in said depot warm for one hour before the arrival of the train at 9:20 p. m. going to or by Pecan Gap, Tex., and that as a proximate result of such failure, if there was such failure, the plaintiff was exposed to cold which proximately caused her to suffer the injuries, or any of them, described in her petition in this cause, or, if you find from a preponderance of the evidence that prior to one hour before the arrival of the train from Pecan Gap, and while the plaintiff was waiting in the waiting room of said depot for the arrival of said train, that it was cold and chilly in said waiting room, and believe that the agent of the Gulf, Colorado, & Santa Fé Railway Company in charge of said depot failed to keep said depot so heated as to be reasonably warm and comfortable to people in an ordinary condition and state of health, and that as a proximate result of said failure, if there was such failure, the plaintiff was exposed to cold, became chilly and contracted a cold and was proximately caused to be afflicted in all or any of the ways alleged in her petition."

[1] Appellant's contention that the instructions referred to were erroneous presents the principal question made by the assignments in its brief. As we understand it, the contention is predicated on testimony which would have supported a finding that the waiting room, because of the state of the weather, was comfortably warm without artificial heat therein, and on the view that appellant owed no other duty to Mrs. Williams than to use care to keep the room warm during the hour before the arrival of the train she was to take for Pecan Gap. It is on that view, it seems, that appellant urges it was error to instruct the jury to find for Mrs. Williams, other conditions concurring, if they believe it kept its depot open for the accommodation of the public during the four or five hours intervening between the arrival at Celeste of the train she traveled there on and the departure from Celeste of the train she left there on. And it is on that view, also, it seems, that appellant urges it was error to refuse its request to the court to instruct the jury to find for it, notwithstanding they believed it did not have a fire in the waiting room upon the occasion in question, unless they further believed—

"such failure was negligence; that is, that a person of ordinary prudence, taking into consideration the temperature and weather conditions at that time would have had a fire."

We think the contention should be overruled. The act of 1891 (Gen. Laws, p. 29; Vernon's Sayles' Ann. Civ. St. 1914, art. 6591) made it appellant's duty to keep the waiting room open and warm "for a time not less than one hour before the arrival and after the departure of all trains carrying passengers" on its railroad; and the act of 1911 (Gen. Laws, p. 173; Vernon's Sayles' Ann. Civ. St. 1914, art. 4553a, rule 52) made it appellant's duty, while its depot was "in use for the accommodation of the public," to have same "properly ventilated, and, if necessary, heated."

Appellant argues that the last-mentioned statute, when construed in connection with the one first mentioned, did not impose a duty on it to keep its depot "properly ventilated, and, if necessary, heated," at any other time than during the hour after the arrival and the hour before the departure of its trains. But clearly, we think, the argument is not sound. The requirement of the act of 1891 was that the depot should be kept *open* and warm for at least one hour after the arrival and one hour before the departure of a train. The requirement of the act of 1911 was, not that the depot should be kept open at all, but that, if it was for the purpose stated, it should be properly ventilated, and, if necessary, heated.

When the purpose of the act of 1911 is kept in mind, to wit, the preservation of the public health, it is plain, we think, that the intent of the Legislature was to require railroad companies to keep their depots ventilated, and, if necessary, warm, not only one hour after the arrival and one hour before the departure of a train, but at all times when the depots were "in use for the accommodation of the public." We are of the opinion, therefore, that the court below did not err when he instructed the jury to find for Mrs. Williams, other conditions concurring, if they believed appellant did not keep the depot heated while she was waiting therein for the train for Pecan Gap.

And we are of the opinion, also, that the court did not err when he refused the special charge requested by appellant. If the waiting room was comfortably warm without artificial heat, of course no duty with respect to it rested upon appellant; but if it was not comfortably warm, then the duty rested upon appellant, not to use care to do so, but to make it comfortably warm. It was on this theory, as we understand it, that the court instructed the jury as he did and refused to instruct them as requested by appellant. The jury were not authorized by the instructions given them to find for Mrs. Williams unless they believed from the evidence that it was "cold and chilly" in the waiting room. If the room was in that condition, then we think the duty on the part of appellant to make it warm was an absolute one. Railway Co. v. Faulkner (Tex. Civ. App.) 194 S. W. 651. The holding in the case cited that failure to comply with requirements of the statute is negligence per se seems to be in conflict with that in Railway Co. v. Turner (Tex. Civ. App.) 93 S. W.

195, but we think it is correct, and that so far as the holding in the Turner Case is to the contrary it is incorrect.

[2, 3] Mrs. Williams having testified as a witness that her health had not been good for several years, that she "was passing through the change of life and was unwell at the time she took the trip," appellant requested the court to instruct the jury to find for it if they believed—

"a person of ordinary prudence in her condition at that time would not have undertaken a trip at that time of the year, and under the circumstances and conditions surrounding her at the time; that is, that her taking the trip and exposing herself in the manner in which she did, was negligence upon her part, which proximately caused or contributed to cause her illness and injuries, if any."

And appellant complains because the court refused its request. We do not think the testimony pointed out in appellant's brief and relied upon to support its complaint presented an issue of negligence on the part of Mrs. Williams in the respect covered by the refused charge, and overrule the contention, as we do the contention with reference to the refusal of the court to give the charge appellant requested with reference to contributory negligence on the part of Mrs. Williams in other respects. The instructions contained in the refused charge last referred to were embraced substantially in the court's main charge to the jury.

Many of the assignments in appellant's brief are based on rulings of the trial court with reference to the pleadings and to the admission and rejection of testimony. We have considered the contentions urged under these assignments, and are of the opinion none of them should be sustained.

The judgment is affirmed.

HODGES, J. I concur in the judgment affirming this case, but do not agree to the unqualified approval of the charge which makes the appellant responsible for the condition of the waiting room prior to one hour before the arrival of her train, and Justice LEVY is of the same opinion. Article 6591 is the only statute in this state which requires railroad companies to keep their waiting rooms open for any definite length of time for the accommodation of passengers. During the interval that may occur between one hour after the departure of a train and one hour before the arrival of another, waiting rooms may be closed and every one excluded.

In defense of the charge counsel for appellee refer to the act of 1911, which appears as article 4553a in Complete Texas Statutes of 1920 of Vernon's Sayles' Ann. Civ. St. 1914. The subdivision there designated as "rule 52," and which is the part relied on, is as follows:

"Each depot, railway coach, sleeping car, interurban car and street car while in use for the accommodation of the public shall be properly ventilated, and, if necessary, heated, and a sufficient amount of heat shall be furnished in time of need so that fresh air can be supplied without causing it to become unduly or uncomfortably cold," etc.

That provision is a part of what is called the "sanitary code," consisting of rules provided by law to prevent the spread of contagious and infectious diseases. The requirement regarding the heating of rooms was doubtless added in this act in order to meet the conditions caused by giving proper ventilation. It was also appropriate in view of the fact that the statute included several other places not mentioned in article 6591. This is a penal statute, and its enforcement is provided for through criminal prosecutions. No private individual can invoke the protection of this statute who does not sustain some legal relation to the railroad company in its capacity as a carrier. To authorize one to sue for damages resulting from a failure of the carrier to comply with this law he must be in a position to demand the service provided for. Before one can demand that a room be heated he must be in a position to demand that the room be open for his benefit. A cold room is not a nuisance, nor is it necessarily a secret harbinger of infectious and contagious diseases. No one will be heard to complain of an uncomfortably cold waiting room who has no legal right to be there. To hold otherwise would convert railway depots and waiting rooms into lounging places for loafers, who have no business with railroads, but who avail themselves of rooms kept open for the accommodation of people who do have such dealings. At junction points, where trains are arriving and departing at frequent intervals, and where several carriers are using the same depots, the waiting rooms cannot be closed without violating the statutory duty to passengers using different trains, going in different directions and over different routes.

However, I think the error in this charge was harmless. The appellee sues for consequences of a cold contracted in the unheated waiting room. While she and her husband occupied the waiting room prior to one hour before the arrival of her train, she did not complain of being uncomfortable till about 20 minutes before that hour began. Practically there is no evidence of any damaging conditions existing previous to the statutory period which could form the basis of a judgment. According to the evidence the fire was not made until about 15 minutes before the arrival of the train going to Pecan Gap, on which the appellee and her husband took passage. Hence there was 45 minutes within the legal limits during which the appellee claims she was suffering from cold. How much of the damaging consequences resulted from the cold prior to that time no jury could say.